IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| LARRY SMITH and § | |
| DIONNE SMITH § | |
| § | |
| v. § | CASE NO. 5:20-CV-00837-EEF-KLN |
| § | |
| 3M COMPANY f/k/a MINNESOTA § | |
| MINING & MANUFACTURING § | |
| COMPANY and EMPIRE § | |
| ABRASIVE EQUIPMENT COMPANY § | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT, 3M COMPANY'S MOTION TO DISMISS**

COME NOW, LARRY SMITH and DIONNE SMITH, Plaintiffs, and file this Response and Memorandum in opposition to Defendant 3M Company's ("3M") Partial Motion to Dismiss, and respectfully show the Court as follows:

**I.
SUMMARY OF THE ARGUMENT**

In this latent occupational lung disease case, Plaintiffs' causes of action against 3M Company ("3M" herein), the manufacturer of the respirators worn by Larry Smith in his work, fall under the Louisiana Product Liability Act ("LPLA" herein). Under Count I, of the Plaintiffs Complaint, the LPLA has been properly pled. Additionally, Plaintiffs bring claims against 3M for negligence, misrepresentation, fraud, and breach of implied warranty. Plaintiffs acknowledge that these claims are outside the LPLA. However, the LPLA is not retroactive.  Therefore, Plaintiffs claims may be alleged because Mr. Smith's exposure to silica and other hazardous dust while using the 3M mask pre-dates the LPLA and his pre-LPLA exposure amounts to a "significant tortious exposure" in accordance with Louisiana law.

1

As far as Plaintiffs' claim for punitive damages, that claim is withdrawn. In accordance with FRCP 15(a)(B), Plaintiffs' have contemporaneously filed their First Amended Complaint with this response and memorandum. In this amendment, Plaintiffs have re-incorporated the factual allegations previously included in Count VI relating to punitive damages [now removed] and re-incorporated these factual allegations into Count I relating to product liability. Therefore, no basis exists for granting 3M's Partial 12(b)(6) Motion to Dismiss.

## II.
## FACTUAL BACKGROUND

Plaintiff, Larry Smith, began working at Libbey Glass in 1980. Plaintiffs' First Amended Complaint ¶ 13. Mr. Smith worked as a mold repairman in the cleaning and molding room. *Id*. As part of his job, he performed abrasive blasting resulting in his exposure to respirable silica, a mineral which causes silicosis. *Id*. During his employment, Mr. Smith was continuously exposed to silica and other harmful dust which caused him to develop silicosis and/or pneumoconiosis. *Id*. at ¶ 14. Decades after he was first exposed to silica, Mr. Smith developed the occupational lung disease, silicosis/pneumoconiosis and the Smiths brought suit against 3M Company, the manufacturer of the 3M 8710 and 3M 8210 masks worn by Mr. Smith to protect him from inhaling silica and other dust in his work. The Smiths also raised claims against Empire Abrasive, the manufacturer of the abrasive blasting equipment used by Mr. Smith.

## III.
## STANDARD OF REVIEW

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). The complaint must

"give the defendant fair notice of what the claim is and the grounds upon which it rests." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005).

In the context of a Rule 12(b)(6) motion, a district court must construe the complaint in favor of the plaintiff and take all well-pleaded facts as true. *Wolcott v. Sebelius*, 635 F. 3d 757, 763 (5th Cir. 2011) (citing *Gonzales v. Kay*, 577 F. 3d 600, 603 (5th Cir. 2009). Rule 12(b) is not a procedure for resolving facts or merits of a case. Dismissal is inappropriate if the complaint pleads facts satisfactory to state "a claim to relief that is plausible on its face." *Leal v. McHugh*, 731 F. 3d 405, 410 (5th Cir. 2013). A claim has facial plausibility when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed. 2d 929 (2007). The face of the complaint must provide sufficient facts to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim. *Lormand v. U.S. Unwired, Inc.*, 565 F. 3d 228, 255-57 (5th Cir. 2009). In the present case, if the Court construes the Smiths' Complaint in their favor and takes all well-pleaded facts as true, the Plaintiffs' claims against 3M are adequately plead.

**IV.**
**PLAINTIFFS' CAUSES OF ACTION UNDER**
**THE LOUISIANA PRODUCT LIABILITY ACT**

The Defendant's motion is form over substance. It appears the Defendant is arguing that the Plaintiff must specifically mention the LPLA in the complaint. This is not the law. A plaintiff states a cause of action under the LPLA when he or she alleges: (1) the defendant is a manufacturer of the product; (2) the plaintiff's damage was proximately caused by a characteristic of the product; (3) the product's characteristic made it unreasonably dangerous in one of the four ways set out in the statute; and (4) the plaintiff's damage arose from his or her reasonably anticipated use of the

3

product. *Jefferson v. Lead Indus. Ass'n, Inc*., 106 F. 3d 1245, 1251 (5th Cir. 1997). The key pleading requirement is that a party correctly plead "enough factual matter (taken as true) to raise a reasonable expectation that discovery will reveal relevant evidence as to each element of a claim." *Lormand,* 565 F. 3d at 257.

A complaint need not "correctly specify the legal theory giving rise to the claim for relief." *Gilbert v. Outback Steakhouse of Florida Inc.,* 295 Fed. Appx. 710, 713 (5th Cir., Oct. 10, 2008) citing, *McManus v. Fleetwood Enters, Inc.,* 320 F. 3d 545, 551 (5th Cir. 2003). Further, a complaint need not outline all the elements of a claim. *General Elec. Capital Corp. v. Posey,* 415 F. 3d 391, 396 (5th Cir. 2005). The "notice pleading requirements of the Federal Rule of Civil Procedure 8 and case law do not require an inordinate amount of detail or precision." *McManus v. Fleetwood Enters, Inc.,* 320 F. 3d at 551.

Accordingly, any lack of reference to the LPLA in Plaintiffs' Complaint does not mean it was improperly pled. The Plaintiffs' pleading provides sufficient factual detail and identifies each element of the LPLA which would apply to the product [the 3M 8710 and 8210] which is the subject of this suit.

The LPLA, specifically outlines the elements of an unreasonably dangerous product as follows:

(1) Construction or composition defect;

(2) Design defect;

(3) Inadequate warning;

(4) Nonconformity to an express warranty.

La.R.S. 9:2800.54(B)(1-4). Under the LPLA, the "statutory mechanisms for establishing that a product is unreasonably dangerous 'are predicated on principles of strict liability, negligence, or

warranty.'" *Stahl v. Novartis Pharm. Corp.*, 283 F. 3d 254, 261 (5th Cir. 2002). The above referenced elements were sufficiently pled by Plaintiffs.

Plaintiffs' Complaint states claims embodied in the LPLA. The Smiths plead, "3M is the designer, manufacturer, distributor and seller of the respirators, namely the 3M 8710 and the 3M 8210 used by Plaintiff throughout the duration of his employment at Libbey Glass Company." Plaintiffs' First Amended Complaint ¶ 15. They also plead that 3M's product was a proximate cause of Mr. Smith's occupational disease. "3M's respirators failed to protect Plaintiff from inhaling silica dust, thereby directly causing or contributing to cause Plaintiff's damages in that he contracted silicosis and/or pneumoconiosis through the inhalation of respirable silica." *Id*. at ¶ 26. And, Plaintiffs state that Mr. Smith's use of the 3M 8710 and 3M 8210 as respiratory protection at his job, constituted a reasonably anticipated use of the product. *Id*. at ¶ 29(c).

As required by the LPLA, Plaintiffs plead the unreasonably dangerous characteristics of the 3M 8710 and 3M 8210. *Id*. at ¶ 29(a-g), ¶ 31(a-d), ¶ 32. Plaintiffs' Complaint contains descriptions of the unreasonably dangerous aspects of the 3M 8710 and 3M 8210 including[1]:

> 3M "knew or with the exercise of reasonable care should have known, that 3M's respirators contained a filter which was not adequate to repel silica dust or prevent Plaintiff from breathing silica dust." *Id*. at ¶ 29(g);

> "3M failed to warn users of these products as to these respirators inability to meet federal certification requirements for use around the type of dust Plaintiff was exposed to pursuant to 30 C.F.R. § 11.140-5 which represents the standard of care to be followed by respirator manufacturers (1972-98). *Id*. at ¶ 31(b);

> "3M expressly warranted with respect to the 3M respirators used by Plaintiff during the term of his employment, that 'one size fits all faces', 'one size fits most faces', and that the 3M respirators would protect Plaintiff from pneumoconiosis producing dust. *Id*. at ¶

---

[1] Some of these factual references were included in Count VI (punitive damages) but are now incorporated into Count I as a result of the pleading amendment removing punitive damages. The paragraph references apply to the Plaintiffs' First Amended Complaint.

"3M failed to warn users of these products as to these respirators inability to comply with 29 C.F.R. 1910.134(e)(5) which represents the standard of care to be followed by respirator manufacturers. *Id.* at ¶

"3M failed to warn users of these products as to these respirators inability to meet the quality control requirements of 30 C.F. R. 11.41 and 11.43 (1972-1998), which represents the standard of care to be followed by respirator manufacturers, because the respirator's defects demonstrated in 3M's own certification testing were Major A defects." *Id*. at ¶

"3M failed to warn users of these products as to these products inability to repel silica and other hazardous dust." *Id*. at ¶

The above-referenced pleaded facts demonstrate "enough factual matter (taken as true) to raise a reasonable expectation as to the unreasonably dangerous characteristics of the 3M 8710/8210." *Lormand,* 565 F. 3d at 257. The Plaintiffs well pled facts illustrate the 3M product in question had warning and design defects relating to: 1) face-piece to face seal; 2) inadequate filtration mechanisms; 3) inadequate quality control compliance for a 'Major A" defect as defined by NIOSH certification regulations, specifically referenced; and 4) inadequate OSHA regulatory compliance relating to fit testing, specifically referenced. When these facts are applied to the LPLA, Plaintiffs Complaint provides sufficient detail to place a Defendant on notice of the claims against it. Plaintiffs' pleaded facts involve the product's composition, design, inadequate warning, and breach of the express warranty as required by the LPLA. These actions are all cognizable under the Louisiana Product Liability Act. La.R.S. 9:2800.54(B)(1-4).

## V.
## MR. SMITH'S DUST EXPOSURE PRE-DATES THE LPLA ALLOWING EXTRA-STATUTORY CLAIMS

Plaintiffs bring other claims against 3M for negligence, strict liability, misrepresentation, fraud, and implied warranty.[2] While these claims are precluded by the LPLA, the LPLA must be applied prospectively. Plaintiffs use of the Defendant's products predate the LPLA. Mr. Smith

---

[2]Plaintiffs withdraw their punitive damages claim in their First Amended Complaint.

used the 3M 8710 beginning in 1980, when he was first exposed to silica dust and other dust in his work at Libbey Glass. Plaintiffs' First Amended Complaint ¶ 13& ¶ 14. The LPLA took effect on September 1, 1988, 8 years after Mr. Smith's use of the 3M respirator began. To hold that the traditional claims pled here have been statutorily abolished would necessitate a retroactive application of the LPLA which has been disallowed under Louisiana law. The Louisiana Supreme Court determined that the LPLA does not apply retroactive. *Gilboy v. Amer. Tobacco Co.*, 582 So. 2d 1263, 1264-65 (La. 1991) ("a statute that changes settled law relating to substantive rights only has prospective effect.").

Under Louisiana law, Mr. Smith's pre-LPLA exposure amounts to significant tortious exposure. The theory of "significant tortious exposure" in latent occupational disease cases was first announced by the Louisiana Supreme Court in *Cole v. Celotex Corp.*, 599 So. 2d 1058, 1066 (La. 1992). *Cole* involved the question of whether Act 431, the Louisiana Comparative Fault Law, applied to asbestos exposures which occurred before its enactment. *Id*. The *Cole* Court found that the Act was inapplicable because the Plaintiff's substantial injury producing exposures occurred before the law's enactment. *Id*. at 1068.  The court explained that in occupational disease cases, the "key relevant elements giving rise to a claim … are the repeated tortious exposures resulting in continuous, on-going damages, although the disease may not be considered contracted until later." *Id*. at 1066. The court attributed efforts to pinpoint the date on which the disease was contracted as virtually impossible, medically or legally, because of the lengthy latency period. *Id*., citing *Porter v. American Optical Corp.*, 641 F. 2d 1128, 1133 (5th Cir.), cert. denied, 454 U.S. 1109 (1981).

The rationale of *Cole* was adopted by the Louisiana Supreme Court in *Austin v. Abney Mills*, 824 So. 2d 1137, 1154 (La. 2002); *see also*, *Rando v. Anco Insulations Inc.*, 16 So. 3d 1065,

1072 n. 3 (La. 2009). The Louisiana Supreme Court applied the "significant tortious exposure" theory in *Austin* and held that a cause of action for tort liability accrues upon significant exposure to the disease-causing agent that later results in the manifestation of the damages. *Id.*[3] The Louisiana Supreme Court subsequently found that its holding in *Austin* "should be applied in all cases involving long-latent diseases to determine whether a cause of action can be maintained." *Bulot v. Intracoastal Tubular Services*, 888 So. 2d 1017, 1021 (La. 2004).

As to the LPLA in particular, Louisiana courts have refrained from applying it in cases where significant tortious exposure happened prior to the statute's enactment. *See*, *Pitre v. GAF Corp.*, 705 So. 2d 1149, 1156 (La.App. 1 Cir. 1997), *writ denied*, 749 So. 2d 666 (La 11/19/1999); *Adams v. Owens-Corning Fibreglass Corp.*, 923 So. 2d 118, 122 (La. App. 2005), *writ denied*, 925 So. 2d 519 (La. 2006) (LPLA inapplicable where plaintiff's asbestos exposure spanned decades).

Here, Mr. Smith's silicosis/pneumoconiosis developed from his work at Libbey Glass where he had "prolonged inhalation of dust derived from sand, stone, etc." *See*, *Froust v. Coating Specialists, Inc.*, 364 F. Supp. 1154, 1156 (U.S.D.C., E.D. La., 1973) (silicosis is a latent and insidious occupational disease). Mr. Smith's exposure to dust occurred over many years before it manifested as an occupational lung disease. Thus, pursuant to *Austin*, as long as Mr. Smith presents evidence that his exposures in the years before the LPLA were significant and later resulted in his manifestation of damages, he is permitted by Louisiana law to bring non-LPLA causes of action against 3M. *Austin v. Abney Mills*, 824 So. 2d at 1154, quoting *Cole*, 599 So. 2d at 1066.

---

[3] In *Austin*, the Louisiana Supreme Court specifically rejected the Fifth Circuit's restriction of *Cole* in *Brown v. R.J. Reynolds*, 2 F. 3d 524, 530 (5th Cir. 1995), where it limited *Cole* to causes of action under Act 431.See, *Austin v. Abney Mills, 824 So. 2d*. at 1152. The Louisiana Supreme Court declared in *Austin* that the "significant tortious exposure" theory set forth in *Cole* "logically governs the accrual of a direct tort action in long-latency occupational disease cases ... because the damage does not manifest itself for many years following the conduct from which it arose." *Id.* at 1151.

The Smiths' case is only now underway; no scheduling order is in place and discovery has not yet commenced. The evidence gathered during discovery will show the considerable dust exposure Mr. Smith endured prior to September 1, 1988. Such a factually intensive inquiry is not appropriate for a Rule 12(b)(6) motion to dismiss. Therefore, the causes of action pled in Plaintiffs' First Amended Complaint against Defendant 3M are proper and 3M's 12(b)(6) partial dismissal motion should be denied.

For the reasons stated above, Plaintiffs respectfully request that Defendant 3M's Motion for Partial Dismissal be denied.

    Respectfully submitted,

    **MARTIN WALTON LAW FIRM**

    _/s/ Michael Martin_
    Michael B. Martin
    Texas Bar No.: 13094400
    Kentucky Bar No. 96907
    699 S. Friendswood Drive, Suite 107
    Houston, Texas 77456-4580
    (713) 773-2035
    (832) 559-0878 (facsimile)
    mmartin@martinwaltonlaw.com

    HARRELSON LAW FIRM, P.A.

    _/s/ Steve Harrelson_
    Steve Harrelson
    Arkansas Bar Number 2000086
    Texas Bar Number 24036729
    Louisiana Roll Number 28361
    200 River Market Avenue, Ste. 600
    Little Rock, Arkansas 72201-1777
    (501) 392-5650
    (501) 375-5914 Facsimile
    steve@harrelsonfirm.com

    ***ATTORNEYS FOR PLAINTIFFS***

CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the foregoing was served on all counsel of record on the 1st day of October, 2020, using the CM/ECF system which will send notification of such filing to all counsel of record who have registered as filing users of the system.

_____

Steve Harrelson