**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| LARRY SMITH, ET AL. | CIVIL ACTION NO. 20-837 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| 3M CO., ET AL. | MAG. JUDGE KAYLA D. MCCLUSKY |

**MEMORANDUM RULING**

Before the Court are partial motions to dismiss filed by Defendants 3M Company ("3M"), Empire Abrasive Equipment Corporation ("Empire Corp.") and Empire Abrasive Company, L.P. ("Empire Co."). Record Documents 9, 19, 23, 35, 46, and 49. Plaintiffs Larry Smith and Dionne Smith oppose all motions. Record Documents 15, 32, 45, 52, and 53. For the reasons stated herein, all pending motions for partial dismissal [Record Documents 9, 19, 23, 35, 46, and 49] are **DENIED**.

**I.    Background**

Plaintiff Larry Smith ("Smith") was employed by Libbey Glass Company from 1980 until 2013. Record Document 30 at ¶ 14. He worked in the cleaning and molding room where his job duties included abrasive blasting, and he was "continuously exposed to silica and other hazardous dust." *Id.* at ¶s 14-15. Because of this exposure, he wore respirators manufactured, designed, sold, and recommended by 3M. *Id.* at ¶s 15-17. Specifically, he alleges that he utilized the respirators known as 3M 8710 and 3M 8210. *Id.* at ¶ 18. Empire Co. and/or Empire Corp. designed, manufactured, distributed, and sold the abrasive blast equipment Smith used in the course of his work. *Id.* at ¶ 14.

In June 2020, Plaintiffs filed suit. Record Document 1. Invoking this Court's diversity jurisdiction, Smith alleged that the 3M respirators failed to perform properly, which caused him to develop "an occupational lung disease including silicosis and/or pneumoconiosis." *Id.* at ¶ 18. He also alleged that Empire Corp.'s abrasive blast cleaning equipment was "defectively designed, manufactured, produced, distributed, and/or sold and inefficient for abrasive blasting users." *Id.* at ¶ 64. He alleged that the defective design made the product unreasonably dangerous and was a "producing cause" of his lung disease. *Id.*

The June 2020 complaint contains numerous counts:

- Count I: product liability claim against 3M. *Id.* at ¶s 23-30.

- Count II: breach of implied and express warranty claim against 3M. *Id.* at ¶s 31-36.

- Count III: negligence against 3M. *Id.* at ¶s 37-41.

- Count IV: misrepresentation against 3M. *Id.* at ¶s 42-43.

- Count V: fraud against 3M. *Id.* at ¶s 44-47.

- Count VI: exemplary/punitive damages against 3M. *Id.* at ¶s 48-53.

- Count VII: gross negligence (seeking punitive damages) against 3M. *Id.* at ¶s 54-59.

- Count VIII: defective design and failure to warn against Empire Corp. *Id.* at ¶s 60-62

- Count IX: defective design and failure to warn against Empire Corp.[1] *Id.* at ¶s 63-65.

- Count X: negligence against Empire Corp. *Id.* at ¶s 66-68.

---

[1] Count VIII and Count IX are identical.

- Count XI: breach of express and implied warranties against Empire Corp. *Id.* at ¶s 69-70.

- Count XII: loss of consortium on behalf of Smith's wife, Plaintiff Dionne Smith. *Id.* at ¶s 71-74.

In response to the complaint, 3M filed a partial motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Record Document 9. In that motion, 3M argues that "the implied warranty component of Count II, and all of Counts III, IV, V, VI, and VII" should be dismissed. *Id.* It contends that the implied warranty component of Count II and all of Counts III, IV, V must be dismissed because Smith filed suit under the Louisiana Products Liability Act ("LPLA") and, therefore, may not recover under any theory of liability that is not set forth in the LPLA. Record Document 9-1 at 1, 6-7. 3M argues that Counts VI and VII seeking punitive damages must be dismissed because Louisiana law requires punitive damages to be authorized by statute, which is not the case here. *Id.* at 3-5.

Plaintiffs filed an opposition to 3M's motion to dismiss addressing the LPLA challenge and, contemporaneously therewith, filed an amended complaint which removed the claims seeking punitive damages (Counts VI and VII) but still contained all other counts. Record Documents 15 and 16. In response, 3M filed a motion to dismiss re-urging the arguments it raised regarding the implied warranty component of Count II and all of Counts III, IV, and V. Record Document 19.

Empire Corp. also filed a partial motion to dismiss pursuant to Rule 12(b)(6) in response to Plaintiffs' amended complaint. Record Document 23. In this motion, Empire Corp. argues that the implied warranty and negligence claims contained in Counts X and XI of the amended

3

complaint must be dismissed.[2] Record Document 23. Like 3M, Empire Corp. maintains that these claims are barred because the LPLA is the exclusive remedy in this products liability case. Record Document 24 at 3.

Subsequent to this, the Court reviewed Plaintiffs' amended complaint and noted that they failed to properly establish diversity jurisdiction because the complaint failed to name the state of incorporation and principal place of business for Empire Corp. Record Document 29. The Court ordered Plaintiffs to amend their complaint to properly establish diversity jurisdiction. *Id.* Plaintiffs did so. Record Document 30. This second amended complaint is identical to the amended complaint in all relevant respects except that it alleges the facts necessary to establish diversity jurisdiction and adds Empire Co. as a defendant to each claim originally filed only against Empire Corp. *Id.*

Because Plaintiffs again amended their complaint, 3M again renewed its motion to dismiss all non-LPLA claims. Record Document 35. Likewise, Empire Corp. filed another motion to dismiss seeking dismissal of all non-LPLA claims against it. Record Document 49. For the first time, Empire Co. filed a motion to dismiss. Record Document 46. Like the other Defendants, Empire Co. argues that Smith's non-LPLA claims must be dismissed. Record Document 47.

---

[2] Plaintiffs' first amended complaint removes Counts VI and VII but does not renumber the remaining counts. Thus, the numbering of counts used in the Court's summary above remains an accurate reflection of the numbering in Plaintiffs' amended complaints.

## II.  Law and Analysis

### A.  Rule 12(b)(6) Standard

In order to survive a motion to dismiss brought under Rule 12(b)(6), a plaintiff must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Twombly*, 550 U.S. at 555). A court must accept as true all of the factual allegations in the complaint in determining whether plaintiff has stated a plausible claim. *See Twombly*, 550 U.S. at 555; *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). If a complaint cannot meet this standard, it may be dismissed for failure to state a claim upon which relief can be granted. *Iqbal*, 556 U.S. at 678–79. A court does not evaluate a plaintiff's likelihood for success, but instead determines whether a plaintiff has pleaded a legally cognizable claim. *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). A dismissal under 12(b)(6) ends the case "at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558. A court may consider "the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Wolcott*, 635 F.3d at 763 (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)).

B.     **Mooted Motions**

Several motions in this case have become moot as Plaintiffs amended their complaint and Defendants filed subsequent motions after each complaint. First, 3M's original motion to dismiss Counts VI and VII seeking punitive damages, the implied warranty component of Count II, and all of Counts III, IV, V, VI, and VII as non-LPLA claims [Record Document 9] is **DENIED as moot** because Plaintiffs filed an amended complaint and because they withdrew any claims seeking punitive damages. Likewise, 3M's motion to dismiss [Record Document 19] and Empire Corp.'s motion to dismiss [Record Document 23] filed in response to Plaintiffs' first amended complaint is **DENIED as moot** because Plaintiffs subsequently filed a second amended complaint. The Court now turns to the remaining partial motions to dismiss filed after Plaintiffs submitted their second amended complaint. Record Documents 35, 46, and 49. These motions all seek the same relief—dismissal of all non-LPLA claims related to the allegedly defective products.[3]

C.     **Exclusivity of the Louisiana Products Liability Act**

The LPLA became effective on September 1, 1988 and "establishes the exclusive theories of liability for manufacturers for damage caused by their products." *Brown v. R.J. Reynolds Tobacco Co.*, 52 F.3d 524, 526 (5th Cir. 1995) (quoting La. Rev. Stat. § 9:2800.52). The theories of liability contained in the LPLA are defective design, defective manufacture, failure to warn, and breach of express warranty. La. Rev. Stat. §§ 9:2800.55-.58. Theories such as negligence, breach of implied warranty, and fraudulent misrepresentation do not arise under

---

[3] The parties do not seek dismissal of Count XII (Dionne Smith's loss of consortium claim), or of any claims filed under the LPLA.

the LPLA. *Lewis v. GE Healthcare, Inc.*, No. 5:19-CV-00490, 2020 WL 1490719, at *4 (W.D. La. Mar. 25, 2020) (collecting cases). The LPLA is not retroactively applicable, however, and is therefore not a bar for causes of action which accrued prior to its enactment. *Brown*, 52 F.3d at 527 (citing *Cole v. Celotex Corp.*, 599 So. 2d 1058, 1063 (La. 1992)).

In this case, Plaintiffs do not dispute that several of their claims, such as negligence and breach of implied warranty, are barred by the LPLA if they accrued after the LPLA's 1988 enactment. Record Document 15 at 6. Thus, when Smith's claims accrued is the central issue for determination in this matter because if they accrued after 1988, then all of Smith's non-LPLA claims must be dismissed. The parties disagree about how to determine when Smith's claims accrued, however.

Defendants, citing Fifth Circuit precedent, argue that Smith's claims related to the 3M masks and to abrasive blasting equipment accrued when Smith's injuries occurred. Record Documents 20 at 2 and 40 at 2. While Smith does not plead the exact date on which he became ill, they reason that it was after the LPLA's enactment because he alleges eight years of exposure prior to its enactment and twenty-five years afterward. Record Document 20 at 2.

According to Plaintiffs, the Court must apply the significant-exposure theory to determine the accrual date. Record Document 15 at 6-10. This theory, which has been applied by the Louisiana Supreme Court in several cases involving plaintiffs with a long-latency occupational disease, determines a claim's accrual date by determining when the plaintiff has exposures that are "significant" and "later result in the manifestation of damages." *Austin v. Abney Mills, Inc.*, 01-1598 (La. 9/4/02); 824 So. 2d 1137, 1154 (quoting *Cole*, 599 So. 2d at 1066). Plaintiffs argue that the accrual date under this standard cannot be determined at this stage of

the litigation because it is heavily fact-based, and that the motion to dismiss must therefore be denied. Record Document 15 at 9.

The Court turns first to determining which test applies to the instant case. The parties have directed the Court's attention to three main cases relevant to this issue—two from the Louisiana Supreme Court and one from the Fifth Circuit Court of Appeals. A discussion of each in chronological order is helpful.

In *Cole v. Celotex Corporation*, the Louisiana Supreme Court had to determine the applicability of a Louisiana comparative fault statute to several plaintiffs who were exposed to asbestos in the workplace. *Cole*, 599 So. 2d at 1061-62. The statute at issue contained a clause stating that it did not apply to "claims arising from events that occurred prior to" August 1, 1980. *Id.* at 1064. The court therefore focused its analysis on defining the "relevant 'events' in long-latency occupational disease cases." *Id.* at 1066. Ultimately, the court decided that "the key relevant events giving rise to a claim in long-latency occupational disease cases are the repeated tortious exposures resulting in continuous, on-going damages, although the disease may not be considered contracted or manifested until later." *Id.* It therefore held that "when the tortious exposures occurring before [the comparative fault statute's] effective date are significant and such exposures later result in the manifestation of damages," the law in effect before the comparative fault statute applies. *Id.*

Nearly ten years later, in 2001, the Fifth Circuit had to decide the accrual date in a case involving the LPLA. *Grenier v. Med. Eng'g Corp.*, 243 F.3d 200 (5th Cir. 2001). In *Grenier*, a plaintiff underwent breast augmentation surgery in 1983 and began experiencing health problems in the early 1990s that she later alleged were caused by the implants. *Id.* at 203-04.

8

Like Plaintiffs in this case, the plaintiff in *Grenier* included in her complaint numerous theories of liability including defective design, defective manufacture, failure to warn, breach of warranty and negligent misrepresentation. *Id.* at 203. Also like in this case, the availability of claims other than the those permitted by the LPLA turned on when the plaintiff's claims accrued. *Id.* The *Grenier* plaintiff, relying on *Cole*, argued that her claims accrued in 1983 when she received the implants and began having significant exposure to the product later causing her illness. *Id.* at 204. The Fifth Circuit rejected this argument. It reasoned that *Cole* was distinguishable because the Louisiana Supreme Court was interpreting a statute that applied to "claims *arising from events* that occurred" after a certain date, and the LPLA does not contain the same "events" language. *Id.* (emphasis in original). The court stated that, "although the events giving rise to [the plaintiff's] injuries occurred in 1983, that fact has no bearing on the question of when the injuries occurred and the cause of action accrued." *Id.* The Fifth Circuit held that the date of injury is the relevant date for accrual. *Id.*

The next year, in 2002, the Louisiana Supreme Court issued its decision in *Austin v. Abney Mills, Inc. Austin*, 824 So. 2d at 1154-55. The *Austin* plaintiff suffered from a long-latency asbestos-related disease which he contracted after working for two companies between 1955 and 1998. *Id.* at 1139. He filed a tort suit against his employers and unnamed executive officers of the companies. *Id.* The defendants moved for dismissal, arguing that because the plaintiff became disabled in 1998, the worker's compensation statute enacted in 1975 was his exclusive remedy. *Id.* at 1141. The court therefore had to determine "when a tort cause of action under La. Civ. Code art. 2315 accrues in a long-latency occupational disease case in which the

9

individual suffers from the disease." *Id.* at 1143. The court looked to its earlier opinion in *Cole* for guidance and explained that:

> While the *Cole* court may not have answered the question presented to us in the instant case, it did set out a framework for determining when a cause of action accrues in long-latency occupational disease cases, i.e., the significant exposure theory, especially when the individual suffers from the disease and the court must determine the applicable law.

*Id.* at 1150. The court held that the "significant tortious exposure" theory applies to determine the accrual date "in a long-latency occupational disease case [ ] wherein the plaintiff suffers from the disease." *Id.* at 1154. The *Austin* court did not address the Fifth Circuit's holding in *Grenier*, but it did expressly reject the argument that *Cole* should be limited to its facts because it was merely interpreting the meaning of "events" under a different statute. *Id.* at 1152-53.

Defendants argue that because neither the Fifth Circuit nor the Louisiana Supreme Court has explicitly disavowed *Grenier*, it remains good law and must be followed. Record Documents 20 at 3-4 and 40 at 2-3. The Court is not persuaded. First, the holding in *Austin* plainly rejected the *Grenier* court's rationale for distinguishing *Cole* when it held that the theory enunciated in *Cole* would not be limited to those facts. Second, the Court is persuaded by the fact that other federal district courts have applied *Austin* and the significant tortious exposure theory in cases involving long-latency occupational diseases, including in those involving the applicability of the LPLA. *See, e.g., Hayes v. Asbetos, Corp., Ltd.*, No. 2:13-2392, 2014 WL 1270011, at *3 (W.D. La. Mar. 27, 2014); *Moore v. BASF Corp.*, No. CIV.A. 11-1001, 2012 WL 4928910, at *2 (E.D. La. Oct. 16, 2012); *Singleton v. Chevron USA, Inc.*, 835 F. Supp. 2d 144, 149 (E.D. La. 2011); *Guidry v. S. Petroleum Lab'ys*, No. CV 03-936, 2007 WL 9700898, at *3 (M.D. La. Dec. 11, 2007); *Young v. Taylor-Seidenbach*, No. CIV.A. 04-715, 2004 WL 1403399, at *3 (E.D.

La. June 22, 2004). Thus, this Court will likewise apply the significant tortious exposure theory to determine when Smith's claims accrued and, consequently, whether the LPLA is the exclusive remedy for Smith's claims related to products liability.

Under the significant exposure theory, a cause of action in a long-latency occupational disease case where the plaintiff suffers from the disease accrues when "the exposures are 'significant and such exposures later result in the manifestation of damages . . . .'" *Austin*, 824 So. 2d at 1154 (quoting *Cole*, 599 So. 2d at 1066). In a case involving asbestos, tortious exposures are significant "when asbestos dust has so damaged the body that the fibrogenic effects of its inhalation will progress independently of further exposure." *Id.* (citing *Abadie v. Metro. Life Ins. Co.*, 00-344 (La. App. 5 Cir. 3/28/01), 784 So. 2d 46, 65). The plaintiff has the burden of proof. *Id.*

At this stage in the litigation, Plaintiffs have carried their burden of pleading facts sufficient to establish that their cause of action accrued prior to 1988 by alleging that Mr. Smith's exposure began in 1980. The exact date at which his exposure was so significant that Smith's alleged lung disease would have progressed without further exposure is a factual issue which cannot appropriately be determined when ruling on a motion to dismiss. Defendants' motions for partial dismissal [Record Documents 35, 46, and 49] are therefore **DENIED**.

### III. Conclusion

For the reasons stated herein, Record Documents 9, 19, and 23 are **DENIED as moot**. The Defendants' remaining motions for partial dismissal [Record Documents 35, 46, and 49] are **DENIED**. This matter is **REFERRED** to the Magistrate Judge for entry of a scheduling order.

**THUS DONE AND SIGNED** this 2nd day of September, 2021.

_____
ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE